IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARISSA L. MILLER** <br> 4351 Village Parkway, Unit 12 <br> Indianapolis, Indiana 46254 <br><br> Plaintiff, <br><br> v. <br><br> **NATIONAL MINORITY** <br> **AIDS COUNCIL** <br> 1000 Vermont Avenue, NW, Suite 200 <br> Washington, DC 20005-4903 <br><br> Defendant. | \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> \* <br> CIVIL ACTION No. <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Marissa L. Miller ("Plaintiff" or "Ms. Miller"), by and through her undersigned counsel, files this Complaint against Defendant National Minority AIDS Counsel ("Defendant" or "NMAC"), and alleges as follows:

**INTRODUCTION**

1. Ms. Miller, an African-American transgender female, is a dedicated and long-serving LGBTQ advocate and professional, specializing in transgender rights. Ms. Miller endured a hostile work environment and disparate treatment while employed with National Minority AIDS Counsel ("NMAC") in Washington, D.C. The type of abuse that Ms. Miller suffered from her superiors, including the Executive Director of NMAC Paul Kawata, and her coworkers included gender-based comments and demeaning and unwelcome behavior directed at her gender identity.

2. Despite Ms. Miller's efforts to work with NMAC leadership to expose and encourage NMAC to eliminate the hostile work environment and disparate treatment, NMAC disregarded Ms. Miller's repeated overtures.  As a result, harassing and discriminatory behavior directed towards Ms. Miller continued throughout her tenure at NMAC.

3. Further, NMAC retaliated against Ms. Miller for engaging in protected EEO activity.  Among other things, when Ms. Miller began speaking out about the hostile work environment, her superiors punished her by denying sick time, excluding her from important business communications, assigning her tasks to be completed in unreasonable time-frames that were unrealistic and that were never given to similarly-situated employees.

4. On September 30, 2019, after having her complaints ignored and continuing to be belittled by the Executive Director, Paul Kawata, and despite no issues with the quality of her work, Ms. Miller was terminated.

5. This lawsuit seeks to redress the harm Ms. Miller endured, to force an end to the discriminatory behaviors towards transgender persons at NMAC, and to ensure that no other transgender person is forced to endure this type of behavior at NMAC or any other employer.

**PARTIES**

6. Plaintiff Marissa L. Miller is an African-American transgender female currently residing in the State of Indiana.  At all times relevant to this Complaint, Ms. Miller resided in Washington D.C. and was employed by NMAC in Washington D.C.

7. Defendant NMAC is a nonprofit organization with its principal offices located in Washington, D. C.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. §1331 and §1343 as these claims arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

9. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States Court for the District of Columbia. Venue is proper as NMAC maintains its primary office in this district, conducts business in this district, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, the alleged unlawful employment practices were committed in this district, and employment records relevant to those practices are maintained and administered in this district.

## INVOCATION OF ADMINISTRATIVE REMEDIES

10. Ms. Miller timely filed a charge with the District of Columbia Office of Human Rights ("OHR") which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

11. This Complaint is filed within ninety (90) days of the date of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

12. Since she began work at NMAC, Ms. Miller, the first Black-transgender woman employed by NMAC, has been subjected to rude and disrespectful comments, denial of rights to the same privileges and benefits given to non-transgender employees, and the undermining of her efforts to excel at her job.

13. Ms. Miller began her tenure with NMAC on February 1, 2018, after relocating from Chicago, with high hopes and expectations that she could work and make significant changes in

the organization. Despite those high hopes, from day one Ms. Miller received no support for her efforts and instead faced continual hostility from management.

14. The majority of the discriminatory treatment that Ms. Miller faced came from Paul Kawata, the Executive Director, of NMAC.  Mr. Kawata has worked in the industry for nearly 30 years. Despite his years of service in the industry, he has never employed a Black-transgender woman, and he had to be encouraged by his board of directors to do so.

15. Mr. Kawata's inappropriate conduct began early in Ms. Miller's tenure, when she suggested to Mr. Kawata that the organization could use some restorative healing. Mr. Kawata responded in a rude and condescending manner that, "if you're looking for compassion, get a dog." Ms. Miller never observed any other employees being talked to in such a manner.

16. During an event, it was questioned if an individual was a "drag queen," and Mr. Kawata said "no she's a real woman."  Nearly all of management heard these remarks, and laughed and looked at Ms. Miller.  Needless to say, these remarks left Ms. Miller shocked and distressed.

17. Other instances centered on management's denial of basic benefits accorded to other employees. Ms. Miller requested sick days for her health or for other compelling reasons. She was denied her requests, including requests for telework in lieu of sick days, while other employees were routinely and gratuitously granted such privileges.

18. When Ms. Miller asked for leave, Ms. Miller's manager unfairly accused her of taking too many days off, while other employees were given liberal leave.

19.  Ms. Miller generated an idea independent of NMAC to organize a National Trans Visibility March.  This idea of the march was initially supported by NMAC and its management both verbally and in writing.  Ms. Miller also ably found a corporate sponsor, who had agreed to provide $500,000 for the project.  In March 2019, Mr. Kawata cancelled the event (and also all

events within the march), and he gave no explanation to Ms. Miller. This was a watershed project for Ms. Miller, and its cancellation caused her great distress. Upon information and belief, there were no similar instances where employees had similar funded projects abruptly cancelled.

20. NMAC management's treatment of other transgender individuals appears systemic. Another NMAC employee, who could be described as a Black transgender woman but had recently transitioned back to a Black cisgender man was subject to poor treatment. This individual complained in writing via social media and other media about the toxic environment experienced at NMAC. Another transgender person, an Asian woman, has also spoken of NMAC's numerous problems with trans-people. The only other person who can be described as a Black transgender women, no longer works for NMAC.

21. On several occasions, Ms. Miller was asked questions by her colleagues regarding her gender reassignment surgeries. One such question asked was "what is between your legs." Embarrassed and ostracized, Ms. Miller responded "I prefer not to discuss [that]." When she reported that incident to NMAC management and requested that they educate their employees to prevent such incidences in the future, NMAC took no action whatsoever to attempt to prevent such comments and unlawful activities from occurring in the future.

22. There were also numerous times that NMAC coordinators referenced Ms. Miller as "he" and then quietly apologized. When this was brought to management's attention, they simply responded "we need to do more training" and "you know this is all new to us." Despite Ms. Miller's numerous requests, no such training was provided.

23. Two co-employees of Ms. Miller during her tenure at NMAC have submitted affidavits detailing the mistreatment Ms. Miller endured. True and correct photocopies of these

Affidavits are attached hereto by reference as Exhibits A and B, and the facts set forth in these Affidavits are incorporated herein by reference as if fully set forth herein.

## CLAIMS FOR RELIEF

### COUNT I
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*)

24. Ms. Miller incorporates the proceeding paragraphs as alleged above.

25. Ms. Miller suffered a hostile work environment when, within the workplace and despite numerous complaints, she was subjected to frequent belittling and derogatory comments about her gender identity, and being transgender. In addition, Ms. Miller was forced to complete demeaning tasks based on her gender identity and being transgender, which reflected humiliating and stereotypical assumptions about transgender persons.

26. The comments, degrading remarks and demands both ridiculed and insulted transgender persons and were sufficiently severe and pervasive to alter the conditions of her employment and create an abusive working environment.

27. Ms. Miller did not, in any way or form, welcome this harassing conduct.

28. The comments and degrading remarks and demands singled out transgender persons and therefore constitute conduct because of Ms. Miller being transgender.

29. NMAC management had actual notice of the harassing conduct because of Ms. Millers repeated complaints and also the Executive Director, Paul Kawata, being one of the primary sources of the harassment and hostile work environment for Ms. Miller and other transgender persons.

30. NMAC management refused to take steps to mitigate the harassment and create a safe and lawful work environment for transgender persons including ending certain harassing

behaviors when it was complained about or forcing those individuals to attend EEO or sensitivity training.

31. NMAC's lack of response to Ms. Miller's complaints of discrimination was because Ms. Miller is transgender.

32. NMAC's harassing conduct and lack of response thereto caused a hostile work environment in violation of the law.

33. As a direct and proximate result of the hostile work environment, Ms. Miller has suffered, and in the future will suffer, irreparable lass and injury, including but not limited to, economic loss, humiliation, embarrassment, mental and emotional distress, anxiety and deprivation of her rights to equal employment opportunities.

34. Through NMAC's actions and the actions of its employees, agents, and representatives described above, NMAC acted intentionally, maliciously, oppressively, and with willful, callous, wanton, and reckless disregard for Ms. Miller's rights.

## COUNT II
### (Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-15)

35. Ms. Miller incorporates the proceeding paragraphs as alleged above.

36. Ms. Miller in every aspect of her employment received less favorable treatment due to her gender identity and being transgender.

37. Ms. Miller was hired after a nationwide search by NMAC and never had any work related discipline while at NMAC, no write-ups, etc.

## COUNT III
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)

38. Ms. Miller incorporates the proceeding paragraphs as alleged above.

39. In violation of Title VII, NMAC discriminated against Ms. Miller because she engaged in protected EEO activity. Ms. Miller engaged in protected activities including, but not limited to, requesting EEO mediations, filing internal complaints.

40. As a result of Ms. Miller protected activities, NMAC took adverse action against her, including but not limited to, the following: forcing Ms. Miller to perform additional work duties, denial of promotions and pay raises, exclusion from important meetings, given unrealistic deadlines, and ultimately terminating her employment with NMAC.

41. NMAC unlawfully retaliated against Ms. Miller in violation of Title VII by taking materially adverse employment action against her in response to protected activity.

42. As a result of NMAC's discriminatory and retaliatory actions, Ms. Miller has suffered economic loss, humiliation, embarrassment, psychological and emotional harm, severe emotional and psychological distress, and damage to her career.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that the actions described in the Complaint have created a hostile work environment in violation of the law;

B. Award Plaintiff actual, compensatory damages in an amount to be proven at trial, for a sum in excess of $100,000.00;

C. Award Plaintiff punitive damages;

D. Award Plaintiff all reasonable attorneys' fees and cost; and

E. Award any other relief this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all Counts of the Complaint.

Dated: January 7, 2021 /s/ David Hilton Wise
David Hilton Wise
DC Bar 427796
WISE LAW FIRM, PLC
10640 Page Ave.
Suite 320 Fairfax, VA 22030
Tel: (703) 934-6377
Fax: (703) 934-6379
dwise@wiselaw.pro

Of Counsel:

/s/ Brian S. Jablon
Brian S. Jablon
WELLENS & JABLON
540 B&A Boulevard, Suite 2
Severna Park, Maryland 21146
Tel: (410) 647-1493
Fax: (410) 647-1496
bjablon@wellenslaw.com

*Counsel for Plaintiff*